1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANTHONY PEREZ, et al.,                    No.  1:18-cv-00127-AWI-EPG

12              Plaintiffs,                     ORDER CONCERNING DISPUTE AS TO
                                                WHETHER BODY CAMERA FOOTAGE
13        v.                                    PRODUCED BY CITY DEFENDANTS
                                                SHOULD REMAIN CONFIDENTIAL
14   CITY OF FRESNO, et al.,                    PURSUANT TO STIPULATED
                                                PROTECTIVE ORDER
15              Defendants.
                                                (ECF No. 81)
16

17        On January 23, 2018, various family members ("Plaintiffs") of Joseph Perez ("Mr. Perez")

18   filed this civil rights and wrongful death lawsuit against the City and County of Fresno, various

19   law enforcement officers, and Does 1-10 in connection with Mr. Perez's death. (ECF No. 1). On

20   May 25, 2018, the Court entered a stipulated protective order. (ECF No. 31). On April 29, 2019,

21   Plaintiffs filed an amended complaint, adding American Ambulance and its employee Morgan

22   Anderson as defendants.[1] (ECF No. 56).

23        The instant dispute concerns body camera footage of the incident taken by a Fresno Police

24   Department officer and produced by City Defendants. When City Defendants produced it, they

25   _____

26   [1] Defendants City of Fresno and its law enforcement officers, James Rossetti, Sean Calvert, and Chris Martinez are
     referred to herein as "City Defendants." Defendants County of Fresno and its law enforcement officers, Braithan
     Stoltenberg, Robert McEwen, Karlson Manasan, and Jimmy Robnett are referred to herein as "County Defendants."
27   Defendants American Ambulance and Morgan Anderson are referred to herein as "American Ambulance
     Defendants." Together, those parties are referred to herein as "Defendants." Defendant American Ambulance
28   maintains that its legal name is K.W.P.H. Enterprises, Inc. and that it does business as American Ambulance. For
     readability, the Court refers to it as "American Ambulance."

                                                    1

1   designated it as confidential under the protective order. Plaintiffs now seek to remove that

2   designation. In response, City Defendants have decided to remove the confidentiality designation.

3   County Defendants do not object to public disclosure of the video.  Only American Ambulance

4   and Defendant Anderson argue the footage should remain confidential.

5       The Court held an informal discovery dispute conference on July 29, 2020. (ECF No. 79).

6   Pursuant to Local Rule 251(c), Plaintiffs moved for relief from the protective order by filing a

7   Joint Statement Re: Discovery Disagreement on August 14, 2020. (ECF No. 81). The joint

8   statement described the issue as "whether or not the body camera footage produced by the City

9   Defendants should remain confidential pursuant to the Stipulated Protective Order in this case."

10  (*Id.* at 2). The Court held a hearing on August 21, 2020. Neil Gehlawat appeared for Plaintiffs.

11  Lynn L. Carpenter appeared for City Defendants. James Weakley and Ashley Reyes appeared for

12  County Defendants. Aaron Weissman appeared for American Ambulance Defendants.

13      After weighing the relevant factors, the Court grants Plaintiff's motion and holds that the

14  video shall no longer be deemed confidential under the protective order, such that it may be

15  disclosed to the public.

16  **I.    BACKGROUND**

17      **A.    Allegations in the Amended Complaint**

18      Plaintiff's complaint alleges that on May 10, 2017, Fresno police officers responded to a

19  call about an individual talking to himself in Fresno, California. That individual was Mr. Perez.

20  Defendant police officers handcuffed and restrained Mr. Perez, causing Mr. Perez's death. His

21  death was ruled a homicide, and its cause was asphyxiation.

22      **B.    The Video at Issue in the Motion**

23      This motion concerns body-cam footage of the incident resulting in Mr. Perez's death.

24  The Court reviewed the video *in camera*.

25      The first several minutes show a law enforcement officer's legs.  Mr. Perez can be heard

26  in the background. He appears to be in distress. At one point, Mr. Perez is asked whether he can

27  breathe. He says he can.

28      A board is placed on Mr. Perez and officers press down on it. After Mr. Perez stops

1   making noise, he is asked if he is okay. He does not audibly respond. Eventually, Mr. Perez's

2   body is strapped to the board and is carried to a stretcher near an ambulance. The video is 16:33

3   long.

4          The only persons in the video are the Plaintiff, City of Fresno police officers, and

5   personnel from American Ambulance, including defendant Morgan Anderson.  No names of any

6   officers or ambulance personnel are disclosed on the video.  None of the officers or ambulance

7   personnel wear visible identification.  At times, some of the faces of the officers and ambulance

8   personnel are visible at certain times.

9   **II.      DISCUSSION**

10          **A.      The Parties' Positions**

11          The question before the Court is "whether or not the body camera footage produced by the

12   City Defendants should remain confidential pursuant to the Stipulated Protective Order in this

13   case." (ECF No. 81 at 8).

14          Plaintiffs argue that Defendants bear the burden to establish good cause to protect the

15   body camera footage. They argue that Defendants can show no particularized harm, and even if

16   there were such a harm, the relevant factors favor disclosure given the nature of the footage. They

17   also argue that the footage is obtainable under the California Public Records Act.

18          City Defendants do not oppose the motion. Rather, they state they intend to withdraw the

19   confidential designation on August 28, 2020 pursuant to Section 4.4(a) of the protective order.

20   County Defendants agreed with and joined the City Defendants' position.

21          American Ambulance Defendants remain opposed to Plaintiff's motion. They argue that

22   their privacy interests will be infringed, and as private parties, they are entitled to greater

23   protection. They also argue that there is no First Amendment right at issue and that the California

24   Public Records Act does not apply. In the alternative, they request that the faces of American

25   Ambulance's employees be blurred.

26   ///

27   ///

28

3

1          **B.     American Ambulance's Basis for Its Opposition**

2          As an initial matter, the Court has considered whether American Ambulance and Mr.

3   Anderson have a legal basis to object to Plaintiff's motion.

4          The producing party, the City of Fresno, has indicated its intention to withdraw its

5   confidentiality designation for the video.  There is no provision of the protective order that allows

6   American Ambulance or Mr. Anderson to object to the City of Fresno's decision.  There is no

7   provision in the protective order that allows anyone other than a producing party to designate

8   something as confidential.  Nor is there any provision of the protective order that allows a non-

9   producing party to object when a producing party withdraws such a designation.  At the hearing,

10  American Ambulance Defendants conceded they did not produce the video and that the protective

11  order provides no basis for them to object.

12         Nor does American Ambulance or Mr. Anderson have any contractual right to object to

13  disclosure of the video.  They do not own the video.  Their contract with the County of Fresno

14  provides no ability to object.  At the hearing, the parties could point to no precedent for American

15  Ambulance objecting to the City of Fresno providing similar video to the public.

16         Therefore, it is not clear to the Court that American Ambulance Defendants have any legal

17  basis upon which to object to the de-designation of the video, now that the producing party has

18  withdrawn that designation.

19         Nevertheless, none of the parties have insisted that American Ambulance or Mr. Anderson

20  file a separate motion for protective order for the Court to resolve their objection on the basis of

21  privacy interests.  Moreover, courts have recognized certain third parties' privacy interests when

22  considering public disclosure of evidence. *See, e.g., Estate of Sanchez v. Cnty. of Stanislaus*, No.

23  1:18-cv-00977-DAD-BAM, 2019 WL 1959579 (E.D. Cal. May 2, 2019) (where plaintiffs, who

24  sued concerning death of individual in police custody, sought to remove confidential designation

25  of certain police records under protective order, removing designation in part but maintaining

26  designation in part to protect third parties' privacy interests).

27         Thus, without deciding that American Ambulance and Mr. Anderson are entitled to object

28  under the protective order, the Court turns to the analysis it would undertake if that objection

1  were properly before the Court.

2      **C.**    **Legal Standards for Removing Confidentiality Protection**

3      Protective orders such as the one at issue here are governed by Federal Rule of Civil

4  Procedure 26(c). Although courts may enter a protective order after finding good cause, Fed. R.

5  Civ. P. 26(c)(1), "a court need not do so where (as here) the parties stipulate to such an order," *In*

6  *re Roman Catholic Church Archbishop of Portland in Ore.*, 661 F.3d 417, 426 (9th Cir. 2011).

7      "If a party takes steps to release documents subject to a stipulated order, the party

8  opposing disclosure has the burden of establishing that there is good cause to continue the

9  protection of the discovery material." *Id.* (internal quotation marks and citations omitted). A court

10  then engages in a two-step analysis:

11      First, [the court] must determine whether particularized harm will result from
12      disclosure of information to the public. . . . Second, if the court concludes that
    such harm will result from disclosure of the discovery documents, then it must
13      proceed to balance the public and private interests to decide whether maintaining
    a protective order is necessary.

14  *Id.* (cleaned up).

15      The Ninth Circuit has "directed courts doing this balancing to consider the factors

16  identified by the Third Circuit in *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d

17  Cir.1995)." *Id.* Those factors are:

18      (1) whether disclosure will violate any privacy interests; (2) whether the
    information is being sought for a legitimate purpose or for an improper purpose;
19      (3) whether disclosure of the information will cause a party embarrassment; (4)
20      whether confidentiality is being sought over information important to public
    health and safety; (5) whether the sharing of information among litigants will
21      promote fairness and efficiency; (6) whether a party benefitting from the order of
    confidentiality is a public entity or official; and (7) whether the case involves
22      issues important to the public.

23  *Id.* at n.5 (quoting *Glenmede Trust*, 56 F.3d at 483).

24      **D.**    **American Ambulance Defendants Have Shown Particularized Harm**

25      The first step in the Ninth Circuit's test is to determine whether the party seeking to

26  maintain confidentiality has shown "whether particularized harm will result from disclosure of

27  information to the public." *Id.* at 424. "[B]road allegations of harm, unsubstantiated by specific

28  examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.*

1      American Ambulance Defendants argue public disclosure would cause "a substantial and

2 improper risk of ridicule and public scorn, which would undoubtedly lead to a loss of future

3 employment opportunities." (ECF No. 81 at 14). They also stress that American Ambulance is a

4 private entity and its employees are not public officers or officials as the other Defendants are.

5 They further argue that disclosure would bias a jury pool.

6      The Court finds that American Ambulance Defendants have sufficiently established that

7 particularized harm to American Ambulance employees may result from disclosure of the video

8 to the public. Although the lawsuit is already public, and Mr. Perez's death has been covered in

9 The Fresno Bee, (ECF No. 81, at 23-27) (exhibit to joint statement showing article in The Fresno

10 Bee),[2] releasing the video may draw additional public attention to the case. Moreover, the public

11 may form more definite and adverse views of the American Ambulance employees depicted

12 therein upon viewing the video.  Thus, American Ambulance Defendants' contention—that any

13 individual employee shown in the video could suffer embarrassment and have fewer future

14 employment opportunities--sufficiently establishes particularized harm that may result from

15 disclosure of information to the public.

16      But American Ambulance itself has not established such particularized harm.  It is not an

17 individual, so its employment opportunities will not be so limited.

18      The only other cited harm that could apply to both defendants is a biased jury pool. The

19 Court finds that cited harm is insufficient because the Court has methods to ensure American

20 Ambulance Defendants will receive a fair trial, such as *voir dire*. *See Welsh v. City and Cnty. of*

21 *San Francisco*, 887 F. Supp. 1293, 1301-02 (N.D. Cal. 1995)) (citing *C.B.S. v. U.S. Dist. Court*

22 *for the Cent. Dist. of Cal.,* 729 F.2d 1174, 1182 (9th Cir. 1983)) (finding threat to fair trial in

23 disclosure of videotaped interviews defendants had conducted concerning their police chief's

24 alleged sexual harassment of plaintiff did not constitute good cause; *voir dire* and change of

25 venue could ensure a fair trial). Additionally, the trial is still a long time in the future. (ECF No.

26 _____

27 [2] The Court takes judicial notice of the fact that this lawsuit has been discussed in local publications. *See* Fed. R. Evid. 201(b)-(d); *Von SAher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not

28 whether the contents of those articles were in fact true." (internal quotation marks and citation omitted)).

80) (setting trial date for December 7, 2021). The harm is also not unique to disclosure of the video in light of the significant press already generated about the incident.  Thus, a "broad allegation of harm to potential jury pools does not meet [American Ambulance Defendants'] burden of demonstrating a particularized harm to [them] based on the disclosure of these materials." *Bangert v. Cty. of Placer*, No. 2:17-CV-1667-KJN, 2019 WL 358518, at *4 (E.D. Cal. Jan. 29, 2019) (citing *Welsh*, 887 F. Supp. at 1301).

Finding a particularized harm as to American Ambulance's employees, the Court next weighs the public and private interests using the *Glenmede Trust* factors.

**E.      Balance of the Public Interests Favor Disclosure**

1.      Privacy Interests

Typically, family members have privacy interests in images of their loved ones' demise. *See Nat. Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004) ("[W]e hold that FOIA recognizes surviving family members' right to personal privacy with respect to their close relative's death-scene images."). However, in this case, Plaintiffs, who are Mr. Perez's family members, seek to disclose the video. Therefore, this privacy interest is waived. So are the City Defendants' and County Defendants' privacy interests, as they have not opposed Plaintiff's motion.  There are also no bystanders to the event.  Thus, the only privacy interests are those of American Ambulance employees, including defendant Morgan Anderson.

Defendant Anderson and two other American Ambulance employees appear in the video.[3] Their names are not identified.  Nor is there any identifying information shown in the video.

Moreover, no typically-protected private information is disclosed in the video. For example, the footage does not disclose anyone's addresses, medical records, Social Security Numbers or other similarly private information.

In addition, the individuals had a lessened expectation of privacy in this public encounter. Not only did it take place outside in public, where passersby could have seen or recorded the events, it happened during a police encounter where it was reasonable to expect that body

---

[3] Although the Court reviewed the video in camera, the Court is unfamiliar with the individuals therein. Thus, it cannot determine who is shown or heard in the footage. However, American Ambulance Defendants stated that there are three American Ambulance employees in the video. No party objected to that statement at the hearing.

1   cameras were likely filming the incident.

2          American Ambulance individuals were also acting as support for public functions of the

3   police officers at the time. American Ambulance is the exclusive provider of ambulance services

4   for 911 public support.[4]  Moreover, the video depicts American Ambulance employees assisting

5   and at times making suggestions as to how the police officers should restrain Mr. Perez. Indeed,

6   Plaintiff has sued the American Ambulance employees under 42 U.S.C. § 1983 for allegedly

7   acting under color of state law.  They are thus far from private, disconnected bystanders.  They

8   are included in this video because of their professional assistance of public officers, and their

9   direct involvement in restraining Mr. Perez.

10          And, again, much of the information American Ambulance defendants seek to keep

11   confidential is already available to the public. The docket is public, and The Fresno Bee posted a

12   copy of the complaint. Pablo Lopez, *He Died While Restrained by Officers. The Coroner Called*

13   *It a Homicide. His Family Has Sued*, The Fresno Bee (April 12, 2018),

14   https://www.fresnobee.com/news/local/article208139374.html; *see also* George Hostetter, *FPD's*

15   *Body Cameras Valuable in Internal Affairs Investigations*, The San Joaquin Valley Sun (Nov. 25,

16   2018), http://sjvsun.com/news/fresno/fpds-body-cameras-valuable-internal-affairs-investigations/;

17   John A. Gliatta and Maira Aguilar, *Report for the Period of July 1, 2018 to September 30, 2018*,

18   City of Fresno, Office of Independent Review, 13-14, https://www.fresno.gov/citymanager/wp-

19   content/uploads/sites/7/2018/10/2018_3rd_Quarter_OIR_Report_Final.pdf (describing the

20   incident and noting existence of body camera video). No additional private information is

21   disclosed by the video. The video merely provides far greater detail about the incident than is

22   available thus far to the public.

23          In sum, the privacy interests of American Ambulance employees are not particularly

24   strong. Thus, this factor only lightly favors retaining the confidential designation under the

---

25   [4] The complaint alleges that "Defendant AMERICAN AMBULANCE is and was the sole 9-1-1 provider for the
26   exclusive operating area of Fresno County and Kings County." (ECF No. 56 ¶ 13). American Ambulance admitted
     that allegation. (ECF No. 62 ¶ 13) (in answer of American Ambulance Defendants, admitting American Ambulance
27   "is and at all times relevant hereto was the exclusive provider of ambulance, paramedic and emergency medical
     services for the County of Fresno"). "'Exclusive operating area' means an EMS area or subarea defined by the
     emergency medical services plan for which a local EMS agency, upon the recommendation of a county, restricts
28   operations to one or more emergency ambulance services . . . ." Cal. Health & Safety Code § 1797.85

1    protective order.

2                    2.      Purpose of Disclosure

3         Improper purposes "include the use of the produced discovery materials 'to gratify private

4    spite, promote public scandal, circulate libelous statements, or release trade secrets.'" *Shelley v.*

5    *Cty. of San Joaquin*, No. 2:13-CV-0266 MCE DAD, 2015 WL 2082370, at *4 (E.D. Cal. May 4,

6    2015) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)).

7         American Ambulance Defendants argue that there is no litigation-related need for the

8    video and Plaintiffs' "sole motivation . . . is to influence potential jurors, thereby tainting the jury

9    pool, and improperly and unfairly prejudicing defendants . . . ." (ECF No. 81 at 18).

10        Plaintiffs state their purpose as follows: "In light of the police violence epidemic plaguing

11   the country (evidenced by nationwide protests in the wake of George Floyd's death), Plaintiffs

12   wish to bring light to the troubling practices employed by law enforcement officers and

13   paramedics in causing Joseph Perez's death." (ECF No. 81 at 6).

14        While the Court takes no position whether the video will support Plaintiff's goal, the

15   stated purpose is legitimate.  A desire to educate the public about issues involving public officers

16   is a legitimate reason to disclose information produced in discovery. Plaintiffs are relatives of a

17   person who died based on an interaction with the police officers.  These issues are at the forefront

18   of public discourse at this time in this country.  Indeed, counsel for City Defendants, who

19   produced the video, explained that the City of Fresno made the decision to withdraw its

20   confidentiality designation to facilitate transparency in a time of societal interest in law

21   enforcement interactions such as these, explaining:

22            There are many, many societal issues at play right now in the current pandemic
              and also in the post-George Floyd era that I'm sure this Court is mindful of. They
23            do not just affect public entities and their law enforcement officers, but they affect
              a large number of persons in the population, including the court. I mean, one only
24            need to read the news in order to see that. . . . [T]he City's position here . . . is
              now to attempt to be transparent in view of the timing of this request by Plaintiff's
25            counsel.
26
27        Here, the family members of Mr. Perez wish to fully disclose what happened to Mr. Perez

28   to add it to the ongoing public debate about these issues.  Furthermore, the City of Fresno has

1   itself determined that the video should be part of that public discourse.  This is a proper purpose

2   of public dissemination.

3          In contrast, there is no indication that public disclosure would "gratify private spite,

4   promote public scandal, circulate libelous statements, or release trade secrets."  Plaintiffs have no

5   independent relationship with defendants outside of this controversy.  They are not using

6   publication of the video out of spite or other improper private purpose.  It appears that they

7   merely wish for the full (or at least fuller) truth of what happened to Mr. Perez to be available to

8   the public.

9          The Southern District of California confronted this issue in *Sampson v. City of El Centro*,

10   No. 3:14-cv-1807-L-DHB, 2015 WL 11658713 (S.D. Cal. Aug. 31, 2015). There, surviving

11   relatives of Charles Sampson sued the City of El Centro, its police department, and individual

12   officers for wrongful death and violating Mr. Samson's constitutional rights. They sought to

13   release body camera footage subject to a protective order. *Id.* at *1-3. Their stated purpose was to

14   "disclose the information as part of the national discussion about police treatment of minorities

15   and law enforcement's use of body cameras." *Id.* at *8. Despite the defendants' objections that

16   plaintiffs' claims were "merely a guise of Plaintiffs' counsel's attempt to . . . taint the jury pool,"

17   the *Sampson* court determined that Plaintiffs' purpose was proper. Rather, "Plaintiffs' motives

18   implicate important societal interests." *Id.* at *9 (internal quotation marks and citation omitted).

19          The Court finds *Sampson* persuasive. The stated purposes and objections are very similar.

20   Thus, as there, Plaintiffs' purpose here implicates important societal interests. Accordingly, this

21   factor weighs in favor of disclosure.

                            3.      Embarrassment

23          American Ambulance defendants claim that employees will suffer from embarrassment if

24   the video is released.  While it is true that American Ambulance employees may be embarrassed

25   by the video to the extent they believe it will shed a negative light on them, that embarrassment

26   only arises from a fuller understanding of their role in the incident.  As was discussed regarding

27   private interests, there is no disclosure of inherently embarrassing private information such as

28   scandalous acts or private medical issues.  Additionally, the basic facts of the case are already

1   public, and so is Defendant Anderson's name. That preexisting publicity reduces the strength of

2   this factor.

3          The Court finds the third factor is neutral as to disclosure.

4                  4.      Importance to Public Health and Safety

5          Again, the video depicts an incident where restraints used during an interaction with

6   policy and ambulance personnel resulted in Mr. Perez's death.  The issue of restraints and the risk

7   of death during police encounters is very important to public health and safety. Certainly, as a

8   matter of public health and safety, it is important to limit the risk of death during interactions with

9   police officers. It is also an important matter of public health and safety to understand risks to

10  policy officers in such encounters.  Thus, having a fuller understanding of this incident has very

11  high importance to public health and safety.  Therefore, this factor strongly weighs in favor of

12  disclosure. *See also Harmon v. City of Santa Clara*, 323 F.R.D. 617, 625 (N.D. Cal. 2018) (noting

13  "the national discussion about police treatment of minorities and law enforcement's use of body

14  cameras, . . . law enforcement's use of body cameras is an issue of importance to the public

15  generally, and to public health and safety specifically" (quoting *Sampson*, 2015 WL 11658713, at

16  *8-10 (internal quotation marks omitted))).

17                 5.      Fairness and Efficiency by Sharing Among Litigants

18         This factor is not a consideration because all litigants have access to the video.

19                 6.      Public Entities and Public Officials

20         Some of the parties benefitting from the protective order are public entities and public

21  officials. This weighs in favor of disclosure. *Sampson*, at *9 (citing *Glenmede Trust*, 56 F.3d at

22  484).

23         American Ambulance Defendants argue that as a private entity and private individuals,

24  they are entitled to greater protection. It is true that they are not public officials or entities.

25  However, there are public officials involved, so this factor still weighs in favor of disclosure. *See*

26  *Arnold v. Penn. Dep't of Transp.*, 477 F.3d 105, 110 (3d Cir. 2007) (where information at issue

27  involved public and private individuals and entities, district court properly applied factor when it

28  stated "if we didn't have a public entity involved, it would be a very different case").

11

1   Furthermore, as described above, American Ambulance employees are depicted in this video only

2   in their role as assisting public officers in their official duties.

3           The Court finds that this factor favors disclosure.

4                   7.      Issues of Public Importance

5           As described above, there is an ongoing national conversation about law enforcement's

6   use of restraints, and the balance between protecting officer safety and the risk of death to

7   restrained individuals. George Floyd's recent death[5] while being restrained by police led to

8   worldwide protests.[6] National and local policy proposals for reform are also under consideration

9   across the country.[7]

10          The allegations in this case—even with American Ambulance Defendants' involvement—

11  fall squarely within the ongoing public conversation about police tactics. The footage here, like

12  the footage in other cases in the public's eye, concerns law enforcement officers using restraints

13  on a detained individual that resulted in that individual's death.  It directly concerns many central

14  issues in the public debate including officer safety, mental health challenges, appropriate

15  restraints, and even the ability to breath while being restrained.

16          American Ambulance Defendants concede the importance of these issues but argue that

17  their interests outweigh the issue. (ECF No. 81 at 17). They further argue the interest is

18  diminished "because the issue has already been the subject of discussion in print media and in the

19

20  [5] Other such deaths have also garnered significant societal attention. *See, e.g.,* Ashley Southall, *'I Can't Breathe': 5
    Years After Eric Garner's Death, an Officer Faces Trial*, N.Y. Times (May 12, 2019),

21  https://www.nytimes.com/2019/05/12/nyregion/eric-garner-death-daniel-pantaleo-chokehold.html; Meagan Flynn,
    *Another Black Man Who Died in Custody Told Officers, 'I Can't Breathes.'*, Washington Post (June 11, 2020),

22  https://www.washingtonpost.com/nation/2020/06/11/derrick-scott-oklahoma-city-police/; Emily Wilder, *Phoenix
    Police Held Man on Hot Asphalt for Nearly Six Minutes Before He Died, Video Shows*, The Arizona Republic (Aug.

23  18, 2020), https://www.azcentral.com/story/news/local/phoenix-breaking/2020/08/18/phoenix-police-release-video-
    ramon-lopez-custody-death/3396121001/.

24  [6] The Court takes judicial notice of this fact as "generally known within the trial court's territorial jurisdiction[.]"
    Fed. R. Evid. 201(b)(1).

25  [7] *See, e.g.*, George Floyd and Walter Scott Notification Act, H.R. 7278, 116th Cong. § 101 (2020); *Mayor, City
    Council Announce Members of New Police Reform Commission*, City of Fresno (June 19, 2020),

26  https://www.fresno.gov/news/mayor-city-council-announce-members-of-new-police-reform-commission/ ("In
    response to local and national demands for changes in policing to address decades of inequalities, City leaders have

27  been working to identify actions that will prevent tragic events like the death of George Floyd.  In that spirit, the 37-
    member commission will include residents, community advocates, and experts on public safety and community

28  policing.  The commission will begin meeting immediately and, over the coming weeks, identify reform
    recommendations to the City Council for consideration.").

1    admitted complete absence of a litigation-related need by Plaintiffs . . . ." (*Id.*).

2          The Court disagrees.  The description in the media about what happened is not a substitute

3    for the video footage of this event.  The recent public discussion and circulation of videos of

4    similar tragic encounters has shown that video footage facilitates public discourse in a way that

5    print descriptions do not.

6          There is also a second issue of public importance at hand: American Ambulance is the

7    only emergency ambulance provider in Fresno County. (ECF No. 62 ¶ 13) (American Ambulance

8    Defendants admitting American Ambulance "is and at all times relevant hereto was the exclusive

9    provider of ambulance, paramedic and emergency medical services for the County of Fresno").

10   Given that status, public scrutiny in this city over its actions has higher public importance.

11         This seventh factor merits disclosure.

12              8.      Conclusion Regarding Public and Private Interests

13         After weighing all of these factors, and for the reasons described above, the Court finds

14   that the public interests in favor of disclosure outweigh the private interests in favor of

15   maintaining confidentiality.

16   **F.     Effect of First Amendment**

17         American Ambulance Defendants cite to *Seattle Times Co. v. Rhinehart*, 467 U.S. 20

18   (1984), as "a case determinative of the issues" in the motion. That case concerned "whether

19   parties to civil litigation have a First Amendment right to disseminate, in advance of trial,

20   information gained through the pretrial discovery process." *Id.* at 22. But Plaintiffs here do not

21   argue they have a First Amendment right to disclose the footage. Instead, the instant dispute

22   concerns whether the footage should be subject to a protective order, evaluating the factors

23   described above. *Seattle Times* does not hold that discovery cannot be provided to the public even

24   if those factors weigh in favor of disclosure.

25   **G.     Effect of California Public Records Act**

26         Plaintiffs argue that the record is excepted from disclosure under the California Public

27   Records Act, California Government Code section 6254(f)(4), so the public or the media would

28   otherwise be entitled to it. American Ambulance argues the information is excepted from

13

1    disclosure. However, the Court need not address this issue.

2        American Ambulance Defendants do not argue that the California Public Records Act

3    independently prohibits disclosure.  Case law cited above demonstrates that the factors the court

4    has analyzed govern this issue, without regard to other means that may or may not be available to

5    obtain the same information.

6        **H.    Redaction**

7        In the alternative, American Ambulance Defendants request blurring any identifying

8    features of American Ambulance or its employees. The Court denies this request.

9        The Court has already concluded that under the Ninth Circuit's two-step analysis,

10   disclosure is required. American Ambulance Defendants provide no authority permitting

11   redaction when disclosure is warranted. Rather, it seems the opposite is true. *See In re Roman*

12   *Catholic Archbishop of Portland in Oregon*, 661 F.3d at 425 ("But even when the factors of this

13   two-part test weigh in favor of protecting the discovery material . . . a court must still consider

14   whether redacting portions of the discovery material will nevertheless allow disclosure.").

15       Again, the American Ambulance individuals are not simply private bystanders to this

16   event.  They are active participants, working pursuant to an exclusive contract with public

17   officials.  They were directly involved in the restraint at issue.  One is an individual defendant.  In

18   light of all the factors analyzed above, blurring of the faces of American Ambulance employees is

19   not warranted.

20   **III.    CONCLUSION AND ORDER**

21       After engaging in the two-step test and balancing the *Glenmede Trust* factors, the Court

22   finds that disclosure is required.

23   \\\

24   \\\

25   \\\

26   \\\

27   \\\

28   \\\

14

1          Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion to remove the video's

2    confidentiality designation under the protective order is GRANTED.[8]

3

4    IT IS SO ORDERED.

5        Dated:   **August 26, 2020**          /s/ *Erica P. Grosjean*

6                                          UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[8] As agreed on the record, Plaintiffs should not disclose the footage until American Ambulance has either indicated it will not file an objection to this order with the District Judge, or until the District Judge rules on any such objection.

15