UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ANTHONY PEREZ, et al., | CASE NO. 1:18-CV-0127 AWI EPG |
|---|---|
| Plaintiffs | |
| v. | ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION AND ORDER FOR ADDITIONAL BRIEFING |
| CITY OF FRESNO, et al., | |
| Defendants | (Doc. No. 85) |

This case stems from a fatal encounter between decedent Joseph Perez and members of the City of Fresno Police Department, the County of Fresno Sheriff's Department, and American Ambulance. Currently before the Court is Defendants' American Ambulance ("AA") and AA paramedic Morgan Anderson ("Anderson")'s (collectively "AA Defendants") request for reconsideration of a ruling by the Magistrate Judge that removed a "confidential" designation of bodycam video footage that had been produced by the City of Fresno.

**RECONSIDERATION FRAMEWORK**

A district court may refer pretrial issues to a magistrate judge to either hear and decide or issue findings and recommendations. See 28 U.S.C. § 636(b)(1); Khrapunov v. Prosyankin, 931 F.3d 922, 930-31 (9th Cir. 2019); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1414 (9th Cir. 1991). If a party objects to a non-dispositive pretrial ruling by a magistrate judge, the district court will review or reconsider the ruling under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 626(b)(1)(A); Fed. R. Civ. P. 72(a); Khrapunov, 931 F.3d at 931; Grimes v. City of San

Francisco, 951 F.2d 236, 240-41 (9th Cir. 1991). A magistrate judge's factual findings or discretionary decisions are "clearly erroneous" when the district court is left with the definite and firm conviction that a mistake has been committed. Security Farms v. International Bhd. of Teamsters, 124 F.3d 999, 1014 (9th Cir. 1997); Avalos v. Foster Poultry Farms, 798 F.Supp.2d 1156, 1160 (E.D. Cal. 2011). This standard is significantly deferential. Security Farms, 124 F.3d at 1014; Avalos, 798 F.Supp.2d at 1160. The district court "may not simply substitute its judgment for that of the deciding court." Grimes, 951 F.2d at 241; Avalos, 798 F.Supp.2d at 1160. The "contrary to law" standard allows independent, plenary review of purely legal determinations by the magistrate judge. See PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (5th Cir. 2010); Haines v. Liggett Group, Inc., 975 F.2d 81, 91 (3d Cir.1992); Avalos, 798 F.Supp.2d at 1160; Jadwin v. County of Kern, 767 F.Supp.2d 1069, 1110-11 (E.D. Cal. 2011). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Calderon v. Experian Info. Solutions, Inc., 290 F.R.D. 508, 511 (D. Idaho 2013); Jadwin, 767 F.Supp.2d at 1111.

## MAGISTRATE JUDGE'S ORDER

The City of Fresno designated bodycam video footage from one of its officers as "confidential" and then disclosed the video to all parties as part of the discovery process. The designation of the video as "confidential" was done pursuant to a joint stipulation by the parties and resulting order from the Magistrate Judge. The AA Defendants did not sign the stipulation because they were not yet parties to this case. Plaintiffs later requested that the "confidential" designation be removed. Although initially opposed to Plaintiffs' request, the City and County of Fresno eventually dropped their objections. However, the AA Defendants continued to object to removing the "confidential" designation from the video. The dispute was resolved by the Magistrate Judge in a written order ("Discovery Order"). See Doc. No. 83.

The Discovery Order made a number of key findings. See id. First, the Discovery Order concluded that the AA Defendants did not own the video, and there was no aspect of the stipulated protective order between the parties that would permit a non-producing party to object when the

producing party decides to withdraw a confidential designation. See id. at p.4.  Therefore, the legal basis for the AA Defendants' objection was unclear.  See id.  Nevertheless, because there is case authority that supports recognizing certain third parties' privacy interests when considering public disclosure of evidence, the Discovery Order assumed without deciding that the AA Defendants were entitled to object.  See id.

Second, the Discovery Order concluded that AA had failed to show particularized harm to itself, but that Anderson and two other AA employees did demonstrate particularized harm.  See id. at p.6.  Specifically, although Decedent's death had been covered by local media, releasing the video could draw additional public attention to the case and result in more definite and adverse views of the AA employees in the video.  See id.  The AA employees in the video could suffer embarrassment and have fewer future employment opportunities.  See id.

Third, the Discovery Order balanced the so-called *Glenmede* factors[1] and found that the factors favored disclosure.  Specifically, the Discovery Order found: (1) the three AA employees' privacy interests were "not particularly strong" because their names and identifying information are not portrayed in the video, the incident occurred in public, the docket is public (including the complaint which names Anderson as a defendant and describes his conduct), and the employees were acting in support of public functions being carried out by police officers; (2) Plaintiffs' stated purpose of bringing police violence issues to the attention of the public is a legitimate purpose; (3) while the employees will suffer some embarrassment, the embarrassment arises from a fuller understanding of the employees' role in the incident; the basic facts of the case, as well as Anderson's name, are already in the public domain; (4) the video depicts the use of restrains that resulted in death during an encounter with police and ambulance personnel, which strongly relates to public health and safety; (5) there are no fairness and efficiency issues because all parties have access to the video; (6) although there are private entities involved, the fact that public officials are involved in the incident weighs in favor of disclosure; and (7) the video is important because it

---

[1] The *Glenmeded* factors were developed in *Glenmede Trust Co. v. Thompson*, 56 F.3d 483 (3d Cir. 1995).  The Ninth Circuit has directed that courts are to follow the *Glenmede* factors.  See In re Roman Catholic Archbishop of Portland in Or., 661 F.3d 417, 426 n.5 (9th Cir. 2011).

furthers policy discussions about law enforcement's use of restraints and involves AA, which is the only contracted ambulance service in Fresno County.

Fourth, neither the First Amendment nor the Supreme Court's analysis in *Seattle Times Co. v. Rhineheart*, 467 U.S. 20 (1984) controlled the dispute. At issue is whether a video should remain under a protective order, not whether Plaintiffs have a First Amendment right to disseminate the video to the public.

Fifth, the California Public Records Act is not dispositive because the *Glenmede* factors determine the result of this case, and the AA did not argue that this state law independently prohibits disclosure.

Finally, redaction by blurring the AA employees faces from the video was not appropriate. Case law did not appear to approve redaction and the AA employees were active participants by virtue of an exclusive contract with the County. In light of these considerations and the *Glenmede* factors, blurring the faces was unwarranted.

## AA DEFENDANTS' MOTION

*Defendants' Argument*

The AA Defendants argue that the Discovery Order is clearly erroneous and contrary to law. The AA Defendants argue *inter alia* that the Discovery Order ignored *Seattle Times*, which is case determinative. *Seattle Times* upheld restrictions on disseminating discovery information, despite public interest, and held that there was no First Amendment right to disseminate information disclosed during discovery.

The AA Defendants argue that significant harm that will result. The AA employees will bear a substantial risk of ridicule, scorn, and possibly worse. On a nationwide basis, individuals who are tangentially or directly involved in social issues face protest marches and acts of violence, such as the New Jersey federal judge's family who were shot. Further, release of the video would undoubtedly lead to a loss of future employment opportunity for all AA Defendants.

The AA Defendants argue that application of the *Glenmede* factors leads to the conclusion that the video should remain confidential: (1) the privacy interests for AA employees are strong

because they are private individuals, some have identifying features like a tattoo, the video was on a police bodycam and it was not recording a public activity, there has been no finding that any AA Defendant acted under color of law, and reading about the events on the docket or a newspaper is a far cry from watching the video; (2) while there may be a legitimate purpose for releasing the video, it is completely overshadowed by the AA employees' privacy rights; (3) there is a real danger that release of the video will lead to embarrassment and scorn; (4) while law enforcement's treatment of minorities is important, the AA Defendants are not law enforcement; (5) the video has been produced to all parties; (6) the AA Defendants are private entities and entitled to protection irrespective of their involvement with law enforcement officers; and (7) the privacy and safety rights of the AA Defendants outweigh any benefit to releasing the video pre-trial.

The AA Defendants also argue that the video is protected by the California Public Records Act from disclosure. Specifically, Cal. Gov. Code § 6254(b) operates to exclude the video from release.

Finally, the AA Defendants argue that, if the Court denies reconsideration, then the Court should stay the release of the video until all avenues of appellate relief have been exhausted.

*Plaintiff's Response*

Plaintiffs argue that reconsideration is not warranted. Plaintiffs contend that, pursuant to ¶ 2.6 of the protective order, because the AA Defendants were not the producing parties, they have no standing to object to removing the confidential designation of the video. Additionally, contrary to Defendants' arguments, § 6154(f)(4) of the California Public Records Act would permit disclosure of the video. Further, Plaintiffs argue that *Seattle Times* is not dispositive because, unlike *Seattle Times*, there is no argument that there exists a First Amendment right to disclose the bodycam video. Rather, the contention is that the protective order should be lifted in accordance with the *Glenmede* factors. With respect to the *Glenmede* factors, Plaintiffs emphasize that the AA Defendants are being sued under § 1983 and were working hand in hand with the police officers in their official duties. Otherwise, Plaintiffs essentially reiterate and support the findings in the Discovery Order. Finally, Plaintiffs object to the stay requested by the AA Defendants as unsupported in law.

*Legal Standard*

The "fruits of pre-trial discovery" are presumptively public. Phillips v. GMC, 307 F.3d 1206, 1210 (9th Cir. 2002). However, through either a stipulation between the parties or a showing of "good cause," a court may issue a protective order that limits or prohibits the disclosure of discovery documents/information to the public. Fed. R. Civ. P. 26(c); In re Roman Catholic Archbishop, 661 F.3d 417, 424 (9th Cir. 2011); Phillips, 307 F.3d at 1211 n.1. If a party moves to release documents that are subject to a stipulated order, the party opposing disclosure bears the burden of establishing good cause to continue protecting the discovery material. In re Roman Catholic Archbishop, 661 F.3d at 424. In determining whether to continue to protect discovery materials from public disclosure, courts must consider: (1) whether the party seeking protection has shown particularized harm; (2) the balance between public and private interests; and (3) where appropriate the possibility of redacting sensitive materials. Id. With respect to particularized harm, the proponent of the protective order must allege specific prejudice or harm, broad allegations of harm or prejudice that are unsubstantiated by specific examples or articulated reasoning are insufficient. Id.; Phillips, 307 F.3d at 1210-11; Beckman Indus., Inc. v. International Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992). If particularized harm is shown, courts balance the private interests and public interests through consideration of the seven *Glenmede* factors. In re Catholic Archbishop, 661 F.3d at 424; Phillips, 307 F.3d at 1211. Those factors are:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

In re Catholic Archbishop, 661 F.3d at 424 n.5 (citing Glenmede Trust, 56 F.3d at 483). Even if the *Glenmede* factors favor maintaining a protective order, courts must consider whether disclosure can be accomplished through redaction. Id. at 425; Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003). Courts enjoy broad discretion in fashioning protective order under Rule 26(c), including determining the degree of protection that is appropriate. See

Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984); Osband v. Woodford, 290 F.3d 1036, 1042 (9th Cir. 2002); McDowell v. Calderon, 197 F.3d 1253, 1256 (9th Cir. 1999).

*Discussion*

1. Standing

The Court agrees that nothing in the stipulated protective order expressly gives the AA Defendants the right to designate the video as confidential, remove a confidential designation, or make any objections about a producing party's withdrawal of a confidential designation. See Doc. No. 31. Further, the AA Defendants reliance on § 2.6 the protective order, which defines a "designating party," is misplaced. A "designating party" under the protective order is a party that designates information "that *it produces* in disclosure or in responses to discovery as 'CONFIDENTIAL.'" Doc. No. 30 (emphasis added).[2] The bodycam video is the property of the City of Fresno and was produced by the City of Fresno. There is nothing to indicate that any AA Defendant had custody, control, or some kind ownership interest in the video such that an AA Defendant could produce the video during discovery. Since the AA Defendants could not produce the video, they cannot designate it as "confidential," per the terms of the protective order. See id.

Nevertheless, § 10.2 states in part that "no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in the parties' Stipulation or this Order." Doc. No. 31. Neither the stipulation nor the protective order itself forbid or address the ability of third parties or non-designating parties to object to the intended withdrawal of a confidential designation. The Supreme Court has recognized that Rule 26(c) can be used to protect the privacy interests of both litigants and third parties. Seattle Times, 467 U.S. at 35; see also In re Catholic Archbishop, 661 F.3d at 426; Foltz, 331 F.3d at 1138; Poindexter v. W. Va. Reg'l Jail Auth., 2020 U.S. Dist. LEXIS 169976, *12-*13 (S.D. W. Va. Sep. 17, 2020); Estate of Sanchez v. County of Stanislaus, 2019 U.S. Dist. LEXIS 74538, *13 (E.D. Cal. May 1, 2019); Dominguez v. City of L.A., 2018 U.S. Dist. LEXIS 228278, *11 (C.D. Cal. Apr. 23, 2018); Sampson v. City of El Centro, 2015 U.S. Dist. LEXIS 188854, *22-*23 (S.D. Cal.

---

[2] The Protective Order signed by the Magistrate Judge incorporates by reference Section 2 of the submitted stipulation. Thus, while § 2.6 is not actually printed in the Protective Order, § 2.6 is nevertheless part of the Protective Order.

7

Aug. 31, 2015). Considering that the video shows the death of an individual due to asphyxiation and depicts the actions and words of the AA Defendants and two other AA employees, the AA Defendants and AA employees have a privacy interest in the bodycam video. Under *Seattle Times* and similar cases, those privacy interests are sufficient to be considered by the Court. While technically not a party to the stipulation or the negotiations that led to the stipulation, the AA Defendants and AA employees' interests were ultimately protected by the designation of the bodycam video as "confidential." Removal of that designation now threatens those privacy interests. Given these considerations, and the arguments made against standing (which rely only on the language of § 2.6 of the protective order), the Court cannot hold that the AA Defendants lack standing to object to the removal of the video's confidential designation.

    2.    <u>California Public Records Act – Cal. Gov. Code § 6254 ("§ 6254")</u>

Assuming without deciding that § 6254 by itself would be a sufficient basis to impose or maintain a protective order, the Court finds that the AA Defendants' reliance on § 6254 to be misplaced. The AA Defendants contend that the bodycam video could not be produced in response to a public records request pursuant to § 6254(b). That section reads in pertinent part: "[T]his chapter does not require the disclosure of any of the following records: . . . (b) Records pertaining to pending litigation to which the public agency is a party . . . until the pending litigation or claim has been finally adjudicated or otherwise settled." Cal. Gov. Code § 6254(b).

As the City of Fresno is a party to this case, the bodycam video fits within the literal terms of § 6254(b). However, the exemptions to disclosure in § 6254 are construed narrowly. See <u>ACLU Foundation v. Superior Ct.</u>, 3 Cal.5th 1032, 1042 (2017); <u>County of L.A. v. Superior Ct.</u>, 211 Cal.App.4th 57, 63-64 (2012). Because the exemptions in § 6254 are construed narrowly, the pending litigation exemption of § 6254(b) has been interpreted to protect documents from disclosure "only if the document was specifically prepared for use in litigation." <u>County of L.A.</u>, 211 Cal.App.4th at 64; <u>Board of Trustees of Cal. St. Univ. v. Superior Ct.</u>, 132 Cal.App.4t h 889, 897 (2005); <u>County of Los Angeles v. Superior Ct.</u>, 82 Cal.App.4th 819, 830 (2000); <u>Fairley v. Superior Ct.</u>, 66 Cal.App.4th 1414, 1420-21 (1998); <u>City of Hemet v. Superior Ct.</u>, 37 Cal.App.4th 1411, 1419-20 (1995). A document or report that was prepared for both a litigation and non-

litigation purpose, i.e. for a dual purpose, is protected from disclosure under § 6254(b) depending on the "dominant purpose" behind the document's preparation. County of L.A., 211 Cal.App.4th at 65; Fairley, 66 Cal.App.4th at 1420; City of Hemet, 37 Cal.App.4th at 1419.

Here, the bodycam video was likely made for a variety of reasons. However, there is no argument or indication that the bodycam video was made specifically for this litigation or that the dominant purpose of the bodycam video was for litigation. The AA Defendants' mere reliance on the plain language of § 6254(b), unsupported by citation to any relevant authority that actually interprets or applies that section, fails to demonstrate any potential application to this case. Therefore, the Court concludes that § 6254(b) does not aid the AA Defendants.

3. *Seattle Times/*First Amendment

Plaintiffs argue that the *Seattle Times* is outcome determinative of this discovery dispute. After review, the Court disagrees. The issue in *Seattle Times* was whether a protective order interfered with a First Amendment right to disseminate information (donor lists) gained through discovery in advance of trial. See Seattle Times, 467 U.S. at 22-29. The key question was: "[W]hether a litigant's freedom comprehends the right to disseminate information that he has obtained pursuant to a court order that both granted him access to that information and placed restraints on the way in the information might be used." Id. at 32. With respect to the First Amendment, the Supreme Court concluded that "judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the *restricted party* to a far lesser extent than would restrains on dissemination of information in a different context." Id. at 34 (emphasis added). The Supreme Court then noted the substantial government interest in Rule 26(c) that was unrelated to suppressing expression:

> Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; *discovery also may seriously implicate privacy interests of litigants and third parties*. The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery.

> There is an opportunity, therefore, for litigants to obtain -- incidentally or purposefully -- information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes. As stated by Judge Friendly "[whether] or not the Rule itself authorizes [a particular protective order] . . . we have no question as to the court's jurisdiction to do this under the inherent 'equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices.'" The prevention of the abuse that can attend the coerced production of information under a State's discovery rule is sufficient justification for the authorization of protective orders.

Id. at 34-36 (citations omitted) (emphasis added). Given these considerations, the Supreme Court affirmed the protective order. See id. at 37. "[W]here, as in this case, a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." Id.

From the above, *Seattle Times* was not discussing a party's constitutional interests in maintaining a protective order. Rather, the question concerned the constitutionality of a protective order issued as part of a civil discovery process. A party that was restrained by the protective order asserted that the protective order violated its First Amendment rights. In other words, *Seattle Times* was dealing with a constitutional attack on a protective order. In this case, there is no constitutional attack involved. No party is contending that the protective order at issue in this case violates any First Amendment rights. Instead, the issue is whether there are sufficient considerations under Rule 26(c) that justifies maintaining the protective order in light of a request to withdraw a "confidential" designation by a party and acquiescence to that request by the producing/designating party. While *Seattle Times*'s observations concerning the legitimate purposes served by Rule 26(c) are germane to the Rule 26(c) analysis, *Seattle Times* answered a different legal question than the one involved here. *Seattle Times* is not outcome determinative.

### 4. Particularized Harm

There is no challenge to the Discovery Order's conclusion that Anderson and two other AA employees appear in the bodycam video and that all three of the AA employees had demonstrated particularized harm. Specifically, all depicted AA employees would suffer embarrassment and have fewer employment opportunities if the bodycam video was released. The Court agrees that there is particularized harm to the AA employees.

The Discovery Order also held that AA had not established particularized harm because it was not an individual and its employment opportunities would not be limited like that of its individual employees. AA argues that this is incorrect because as a business entity, its ability to land other contracts would be adversely affected. The Court agrees with AA.

There is no dispute that AA is currently under contract with the County of Fresno to provide ambulance service for 911 calls. AA is the sole contracted ambulance provider for this service. It is not uncommon to judge a company or the services it provides through the actions of its employees. An employees' actions demonstrate the company's service in a specific instance and sometimes can be viewed as a reflection of services in general. An employee's actions can also reflect on the nature of an employer's supervision, which again reflects on the nature of services provided in general. If the future employment opportunities of AA's employees are implicated by the bodycam video, then it would seem that AA's ability to land future contracts is similarly implicated. To be sure, there are differences between an employer like AA and an employee in terms of future employment and contracting prospects. The interests are not fully identical. Nevertheless, simply because AA is not an individual does not mean that its future employment/contract opportunities could not be impacted in a way similar to its employees. Therefore, the Court is left with the definite and firm conviction that the finding that AA faces no particularized harm because it is an entity and not a natural person is mistaken. Respectfully, the Court instead concludes that AA faces a particularized harm from the release of the bodycam video in that AA's ability to land future contracts is implicated.

5. Public and Private Interests

The Discovery Order concluded that the public interests were sufficient to outweigh the privacy interests. The Discovery Order found that the public interests were substantial essentially because there were significant public safety interests (the bodycam depicts an encounter with an individual who died in the restraining process), such police encounters have high public importance, the video depicts public officials, AA's provision of important services on an exclusive basis is an issue of significant public importance, and the Plaintiffs' purpose for disclosure is legitimate. The Discovery Order further noted that this was a public encounter that

11

was visible to any passerby, the AA Defendants and AA employees were aiding government officials as part of performing a public contract for services, the key parts of the video have been described in public filings, any embarrassment results from a fuller understanding of an individual's role in the encounter, and any concerns regarding a tainted jury pool can be addressed and remedied through the voir dire/ jury pool process.

After review, the Court is in general agreement with the Discovery Order's analysis.[3] The Court finds particularly compelling the observations that this incident occurred in public, there has been media coverage of this case, the allegations in the complaint are on the public docket, and there is public interest in police encounters of this type. Further, the AA Defendants do not discuss or address the portion of the Discovery Order that found that the public had a significant interest because AA is under an exclusive contract with a municipal entity (Fresno County) to provide 911 emergency medical service. It seems clear to the Court that the Fresno County public would have a strong interest in evaluating how the sole contracted entity is providing emergency medical services for 911 calls. Therefore, the Court does not find that the Discovery Order's conclusion that the public interests outweigh the private interests is clearly erroneous or contrary to law.

### 3. Redaction

As part of the Discovery Order process, the AA Defendants argued in the alternative that the AA employees' name tags, faces, and identifying marks (e.g. tattoos) be blurred from the video. As part of reconsideration, the AA Defendants did not reassert their alternative request to blur this "identifying information" from the video. Despite this failure, the Court has the authority to reconsider any aspect of a Magistrate Judge's pre-trial orders. See Schur v. L.A. Weight Loss Ctrs., Inc., 577 F.3d 752, 760 (7th Cir. 2009); Allen v. Sybase, Inc., 468 F.3d 642, 658 (10th Cir.

---

[3] The Court does not find that the fact that the AA Defendants are being sued under § 1983 to be a significant consideration. While a successful § 1983 claim would mean that the AA Defendants were acting under color of state law, the AA Defendants have not conceded that they were state actors. Depending on the outcome of further proceedings, it may be determined that the AA Defendants were not acting under color of state law (which would defeat all § 1983 claims against them). The disputed nature of the § 1983 claim would seem to counsel against disclosure of the video until the relevant § 1983 issues are resolved. However, even if the nature of the § 1983 claim weighs in favor of the AA Defendants, public interests would still outweigh the private interests.

1 2006); Cole v. United States Dist. Court for the Dist. of Idaho, 366 F.3d 813, 823 n.14 (9th Cir.
2 2004); Local Rule 303(g).

3       Here, the Court has questions about blurring the AA employees' identifying information.
4 The AA employees are paramedics, they are not law enforcement personnel.  Police officers
5 respond to myriad types of emergency requests to protect the public and restore order, sometimes
6 through the use of force.  Police officers are highly visible to the public, many now are required to
7 wear body cameras, and they know that their actions in restraining or using force against an
8 individual will be scrutinized.  In contrast, paramedics generally respond to one type of emergency
9 request – to provide medical assistance to those who are suffering an acute medical distress.
10 Paramedics do not restore order or use force to arrest individuals, nor are they required to wear
11 body cameras (to the Court's knowledge).  Paramedics are subject to oversight and review, but
12 clearly not in the same way or in a similar public manner as law enforcement.  While both law
13 enforcement and paramedics provide critical and necessary services to the public, there is a
14 significant difference.  As a result, the potential for embarrassment and the privacy interests at
15 stake are not necessarily identical between law enforcement and paramedics.

16       Within this dynamic is the uncertainty regarding how the public will view and react to the
17 bodycam video.  There is nothing before the Court to suggest that a release of the video would
18 result in physical danger to AA employees or to AA property.  Further, the law enforcement
19 personnel and their municipal employers apparently have no reservations or concerns about
20 releasing the video.  However, the Court agrees with AA that a video is not necessarily the same
21 as a written account of an event.  Seeing what happened is generally more vivid and impactful
22 than reading about an event.  The Court also agrees that once the video is released, it could forever
23 be in the public domain through the internet and social media apps.

24       Finally, other courts examining videos of police encounters have recognized the significant
25 privacy interests that non-parties may have in a video of a police encounter.  In the course of
26 conducting a protective order review and ultimately permitting release of a video, some courts
27 have ordered the faces of non-parties be blurred.  See Dominguez, 2018 U.S. Dist. LEXIS 228278
28 at *11; Sampson, 2015 U.S. Dist. LEXIS 188854 at *22.  Even though the *Glenmede* factors may

weigh in favor of disclosure of the video as a whole, it is unclear why the Court cannot take additional measures to address and safeguard the privacy interests of third-parties and parties to a lawsuit, while also permitting disclosure of the material aspects of video.  Cf. Foltz, 331 F.3d at 1136; Dominguez, 2018 U.S. Dist. LEXIS 228278 at *11; Sampson, 2015 U.S. Dist. LEXIS 188854 at *22.  Particularly since the Court has wide discretion in fashioning orders under Rule 26(c).  See Seattle Times, 467 U.S. at 36; Osband, 290 F.3d at 1042.  Additional measures like blurring identifying information would address legitimate privacy concerns and ultimately tip the scale more decidedly towards disclosure.

Given these considerations, the Court finds it advisable to re-examine the issue of whether any or all of the AA employees' "identifying information" should be blurred from the bodycam video prior to removal of the video's "confidential" status.  The parties will be ordered to meet and confer regarding the issue of "blurring" and to submit simultaneous briefing if the meet and confer efforts are fruitless.[4]  The bodycam video will remain confidential under the protective order until the supplemental briefing has been received and the issue has been resolved.[5]

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion for reconsideration (Doc. No. 85) is DENIED at this time;
2. After the parties have met and conferred on the matter, within fourteen (14) days of service of this order, the parties shall submit simultaneous briefing with respect to the issue of whether the "identifying information" of any AA employee depicted in the video should be blurred prior to releasing the video to the public;

---

[4] The parties shall meet and confer in good faith to determine whether any acceptable stipulation may be reached with respect to blurring the identifying information of AA employees.  Any stipulation that can be reached shall be submitted to the Court for review and approval.  If the parties cannot resolve the issue of blurring identifying information of AA's employees from the video, then the parties will submit simultaneous briefing regarding the appropriateness of blurring the identifying information of the three AA employees.

[5] Given this course, it is unnecessary to issue a stay as requested by the AA Defendants to exhaust all appellate efforts.  The Court notes, however, that Plaintiffs' observation that the AA Defendants failed to cite any authority that would authorize such a stay is an accurate observation.

3. Within seven (7) days of service of the initial briefing, the parties shall submit simultaneous replies;[6]

4. Upon receipt of the full supplemental briefing, the Court will issue further appropriate orders (including setting a hearing if the Court determines that hearing would be beneficial); and

5. The bodycam video shall not be disclosed and shall remain confidential until further order from the Court.

IT IS SO ORDERED.

Dated: __February 11, 2021__                    _____
                                                SENIOR DISTRICT JUDGE

---

[6] The Court realizes that there are difficulties that have been created by Covid 19 and its corresponding restrictions. If the parties require additional time to file either the initial briefing or the replies, the parties may file a stipulation for additional time.